# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

*************************************
                                             *

**CROWLEY GOVERNMENT SERVICES, INC.**,
8200 Nations Way
Jacksonville, Florida 32256

Plaintiff,

v.

**GENERAL SERVICES ADMINISTRATION**,
1800 F Street, NW
Washington, DC 20405

and

**ROBIN C. CARNAHAN**, in her official capacity as Administrator of the General Services Administration

Defendants.

*************************************

Case No. 1:21-cv-2298

## COMPLAINT

Crowley Government Services, Inc. ("Crowley"), for its complaint against the General Services Administration ("GSA") and Robin C. Carnahan, Administrator of GSA, in her official capacity, states as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory and injunctive relief against GSA to stop it from interfering with Crowley's contract with the U.S. Transportation Command ("USTRANSCOM"), which supports the Defense Freight Transportation Services ("DFTS") program.

2. USTRANSCOM has accepted Crowley's services and determined that Crowley is entitled to payment in the amounts reflected in its invoices.

3. Nevertheless, acting without legal authority, GSA, a nonparty to the contract, has taken it upon itself to: (a) audit invoices from Crowley to USTRANSCOM; (b) decide that Crowley overcharged USTRANSCOM; (c) issue Notices of Overcharge ("NOCs") to Crowley; and (d) seize millions of dollars lawfully earned by Crowley under the contract.

4. Crowley complained to USTRANSCOM about this conduct and USTRANSCOM agreed with Crowley. The Contracting Officer instructed that "GSA *shall not issue NOCs*" and concluded that GSA's NOCs "*are erroneous*" and "*not valid*."

5. GSA has ignored the Contracting Officer's determination and continues to audit Crowley's contract and issue "erroneous" and invalid NOCs.

6. GSA's actions directly contradict and thus subordinate decisions from the contracting agency, USTRANSCOM, to GSA's own opinion as to the validity of Crowley's invoices. This violates the Contract Disputes Act of 1978 ("CDA"), which states that final decisions from the procuring agency's Contracting Officer are "final and conclusive" and "not subject to review by any … Federal Government agency[.]" 41 U.S.C. § 7103(g).

7. GSA believes that it has authority under Section 322 of the Transportation Act of 1940, 31 U.S.C. § 3726, which amended the Interstate Commerce Act ("ICA"), to conduct post-payment audits and make binding determinations as to the validity of Crowley's past payments, but GSA is wrong.

8. First, 31 U.S.C. § 3726(b) authorizes GSA to audit certain "transportation bills," but that law does not apply to the services provided by Crowley under the contract because Crowley is not acting as a "carrier" or "freight forwarder" and its invoices are not "transportation

bills" within the meaning of the statute.

9. <u>Second</u>, even if Crowley was a carrier or freight forwarder, it is undisputed that USTRANSCOM awarded the contract under the Federal Acquisition Regulation ("FAR," *see* Title 48 of the Code of Federal Regulations), not the ICA. As such, the CDA alone governs disputes related to the contract and GSA has no authority under the Transportation Act to audit Crowley's services or resolve disputes related to them.

10. <u>Third</u>, even if GSA had authority to audit the contract and opine on the validity of Crowley's invoices, any such determinations are and must be subordinate to the final decisions of USTRANSCOM's Contracting Officer, who has already decided that GSA's actions and conclusions with respect to Crowley are "erroneous" and "not valid." GSA is ignoring the Contracting Officer's "final and conclusive" determinations and deeming its own determinations superior to those of the Contracting Officer in plain violation of the CDA's finality clause.

11. Crowley seeks a declaratory judgment that GSA has no authority to audit Crowley's performance under the contract, and no authority to do so contrary to the Contracting Officer's final decisions, and an injunction to stop GSA from issuing NOCs.

## PARTIES

12. Crowley is incorporated under the laws of the state of Delaware with its principal place of business in Jacksonville, Florida. Founded in 1892, Crowley is a family and employee-owned company that provides marine solutions, energy, and logistics services in domestic and international markets.

13. GSA is an independent federal agency within the U.S. Government and is located in Washington, DC.

14. Robin C. Carnahan is the Administrator of GSA, acting in her official capacity.

**JURISDICTION AND VENUE**

15. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

16. Alternatively, this Court has jurisdiction to determine whether a federal agency and its Administrator are acting outside the scope of their statutory authority (*ultra vires*).

17. This Court also has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, 5 U.S.C. § 702, and the Court's inherent equitable powers.

18. Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because an officer or employee of an agency of the United States acting in her official capacity and an agency of the United States are defendants, and because a substantial part of the events or omissions giving rise to this action occurred in the District of Columbia.

**FACTS**

**A.   USTRANSCOM awarded the DFTS contract to Crowley.**

19. On November 22, 2016, USTRANSCOM awarded Contract No. HTC711-17-D-R003 (the "contract") to Crowley Logistics, Inc.

20. The contract is a procurement contract in which Crowley provides various logistical, planning, and transportation coordination services to assist USTRANSCOM with managing a large and complex network of moving goods and cargo for the Department of Defense ("DoD") as part of the DFTS program.

21. Crowley is the successor-in interest to the contract following a novation.

**B.   USTRANSCOM awarded the contract under the FAR, not the ICA.**

22. USTRANSCOM awarded the contract to Crowley under the FAR.

23. The CDA "applies to any express or implied contract … made by an executive

agency for … the procurement of services." 41 U.S.C. § 7102(a)(2). Absent exceptions inapplicable here, the CDA applies to contracts awarded under the FAR. *See* 48 C.F.R. §§ 33.203(a), 33.215(a), 52.233-1(a).

24. The CDA establishes a disputes process that governs all contracts subject to the CDA. This process begins with the submission of a written claim by the contractor or government and, absent an appeal, ends when the Contracting Officer issues a "final and conclusive" decision regarding the claim. 41 U.S.C. § 7103(g).

25. A claim encompasses all potential contractual relief and is defined as a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101.

26. The contract incorporated the FAR clause at 48 C.F.R. § 52.212-4(d), which states that the "contract is subject to 41 U.S.C. chapter 71, Contract Disputes" (i.e., the CDA) and that any claim will be "resolved in accordance with the clause at FAR 52.233-1, Disputes, which is incorporated herein by reference."

27. FAR clause 52.233-1(a), in turn, similarly states that "[t]his contract is subject to 41 U.S.C. chapter 71, Contract Disputes."

28. USTRANSCOM did not award the contract to Crowley under the Transportation Act or ICA.

29. The contract does not mention the Transportation Act or ICA, nor does it state that the contract is subject to GSA's audit authority or the remedial provisions of those laws.

**C. Crowley and USTRANSCOM agreed that Crowley would be responsible for delivery within certain time frames, with certain caveats.**

30. Under the contract, Crowley coordinates services between various locations within

the continental United States, including but not limited to vendor facilities, DoD warehouses or consolidation facilities, and U.S. Armed Forces Bases/Camps/Posts.

31. Crowley does not serve as a carrier or freight forwarder under the contract because Crowley does not handle the freight shipped under the contract or take possession of freight to provide assembly and disassembly services.

32. Rather, Crowley subcontracts the movements to third parties and handles all facets of carrier management, from carrier selection through final payment, including selecting transportation providers (motor carriers, rail carriers, air carriers) to transport DoD cargo.

33. Crowley has planned and managed approximately 1.2 million shipments under the contract to date.

34. The shipping process starts when a government shipper fills out an original shipping order—an Electronic Data Interchange ("EDI") Form 219, often called an EDI 219—with the shipping and delivery information and provides it to Crowley, enters the shipper's information in the electronic Transportation Management System, and arranges for pickup.

35. Crowley then coordinates transportation services.

36. Crowley and USTRANSCOM agreed that Crowley would be responsible for delivery within certain time frames, with certain caveats.

37. First, Crowley and USTRANSCOM agreed that sometimes shipments might be delayed for various reasons. For example, shipments might be delayed for weather. In such circumstances, Crowley can apply a service exception—a type of authorized excuse for missing pickup or delivery for reasons outside of Crowley's control. The authorized list of service exceptions is in the Performance Work Statement ("PWS"), Appendix B, Exception Codes.

38. Second, Crowley and USTRANSCOM also agreed that—in calculating transit

time—they would not include the day of pickup: "[t]ransit time begins the 1st business day *following pickup* with the following exception: For LTL shipments, if pickup occurs after site cutoff time on Friday, any time on Saturday or any time on Sunday, transit time will be calculated as if the shipments picked up on Monday. Meaning the first transit day would be Tuesday." PWS at Appendix K (emphasis added).

39. <u>Third</u>, Crowley and USTRANSCOM agreed that they would not count weekend days: "[a]ll references to 'day(s)' within this contract not specified as 'business days' are understood to mean 'calendar day(s)'. Any due date that falls on the Saturday, Sunday, or holiday as defined in PWS Para 1.3.6.11 is moved to the next normal business day." PWS ¶ 3.1. *See also* PWS, Appendix K: "Weekends and federal holidays will not be counted as transit days for LTL shipments."

**D.  Crowley performs its obligations, but GSA—a stranger to the contract—audits Crowley's invoices based on extra-contractual requirements.**

40. GSA is not a party to the contract.

41. The contract does not identify GSA as having any role to play in the contract, much less authority to make decisions or participate in the disputes process.

42. GSA has nonetheless been auditing Crowley's invoices to USTRANSCOM and assessing NOCs against Crowley based on GSA's determination as to the validity of Crowley's invoices. These NOCs fall within five categories.

43. <u>First</u>, although Crowley and USTRANSCOM agreed that Crowley could apply service exceptions for certain types of delay (PWS, Appendix B, Exception Codes), GSA issued NOCs in connection with such service exceptions.

44. The NOCs reflect that GSA rejected the service exception and downgraded the service, effectively disallowing the contractual pricing.

45. <u>Second</u>, although Crowley and USTRANSCOM agreed that transit time begins "the 1st business day following pickup," GSA issued NOCs incorrectly adding the pick-up day to total transit time.

46. <u>Third</u>, although Crowley and USTRANSCOM agreed to exclude weekend days (PWS ¶ 3.1, Appendix K) from transit time calculations, GSA issued NOCs incorrectly including them.

47. <u>Fourth</u>, GSA issued NOCs based on forms improperly completed by the government.

48. The government shipper prepares the shipping form (EDI 219).

49. This form has spaces for "Service Level" or "Mandatory Delivery Date" ("MDD").

50. Sometimes the government shipper fills in both with inconsistent values (i.e., a service level that is impossible with a particular MDD).

51. When Crowley received EDI 219s from the government, both the "Service Level" and "Mandatory Delivery Date ("MDD") were filled in. GSA issued NOCs for the government's improper EDI 219s.

52. <u>Fifth</u>, although the government booking system does not allow Crowley the opportunity to recommend consolidation of cargo effectively, and USTRANSCOM has acknowledged "[t]his is a limitation of the Government booking system at no fault of [Crowley]," GSA issued NOCs based on Crowley's failure to recommend aggregation and consolidation of cargo.

**E.    Crowley challenges GSA's NOCs under the contract's disputes process and the USTRANSCOM Contracting Officer agrees that GSA's NOCs are "not valid" tells GSA to stop issuing them.**

53. By early 2020, GSA had already issued thousands of erroneous NOCs and caused

Crowley to spend enormous personnel time and resources addressing GSA's unauthorized audits.

54. Consequently, Crowley pursued a claim for relief with the Contracting Officer as provided by the contract's disputes clause.

55. On January 6, 2020, Crowley submitted a certified claim to the Contracting Officer with respect to a sample of NOCs in the first four categories described above.

56. For nearly eight months, Crowley worked with USTRANSCOM to resolve its claim and, during those discussions, added the fifth category of NOCs to the discussion.

57. On August 19, 2020, the Contracting Officer issued the first of three final decisions on Crowley's claim.

58. The August 19, 2020 Final Decision is attached as **Exhibit A.**

59. The August 19, 2020 Final Decision addressed the first three categories of NOCs in Crowley's January 6, 2020 claim: (1) authorized service exceptions, (2) transit time calculation for service, and (3) non-transportation days (i.e., weekends) included in transit time calculations.

60. In this first decision, the Contracting Officer interpreted the contract consistent with Crowley's understanding of the contract's terms, and contrary to the GSA's interpretation on which the NOCs had been based.

61. The Contracting Officer stated that "GSA shall not issue NOCs based on exception codes" for the first category of NOCs, and "GSA shall use this methodology for calculating transit times," with respect to the second and third categories of NOCs.

62. On August 27, 2020, the Contracting Officer issued a second final decision on the claim.

63. The August 27, 2020 Final Decision is attached as **Exhibit B**.

64. The August 27, 2020 Final Decision concerned the fifth category of NOCs

discussed by USTRANSCOM and the GSA after the submission of Crowley's certified claim: GSA's requirement of recommendations for aggregation or consolidation of items shipped.

65. The Contracting Officer stated that Crowley "shall not be issued NOC's for consolidate [sic] and aggregation without prior validation from the shipper and [Contracting Officer]."

66. On December 30, 2020, the Contracting Officer issued a third final decision on the Crowley's claim, finding that the "funds should be refunded to Crowley."

67. The December 30, 2020 Final Decision is attached as **Exhibit C**.

68. The December 30, 2020 Final Decision held that "All NOCs were reviewed by [the Defense Logistics Agency] and they concur the *NOCs are erroneous*. . . . GSA was provided an opportunity to validate its issuances of NOCs disputed in this claim; however, it declined to provide a meaningful or thorough response to the Contracting Officer's requested information. Due to GSA's declined response, the *NOCs issued for this claim are not factually supportable*, and, hence, are *not valid*." (Emphasis added.)

69. For each of the categories of NOCs included in the January 6, 2020 claim, the Contracting Officer concluded, "NOCs should not have been issued."

**F.    GSA ignores the Contracting Officer and continues issuing NOCs—causing Crowley irreparable harm.**

70. Despite the Contracting Officer's final decisions, GSA continues to issue NOCs.

71. GSA's audits have forced Crowley to expend enormous time and expense simply to try and determine the basis and reasoning behind each NOC, and then dispute them.

72. Since 2018, GSA has issued an astonishing ***50,593 NOCs*** to Crowley totaling approximately $37 million in alleged overcharges.

73. In June 2021 alone, Crowley received over 11,000 NOCs.

74. GSA may begin deducting payments to Crowley if Crowley fails to respond within 30 days of the NOC.

75. Given the volume of invoices, Crowley is not able to review each of them individually.

76. Instead, Crowley has had to use software to quickly categorize the basis for each of the NOCs in order to protest GSA's action.

77. If Crowley were review each NOC on an individual basis, it would take on average 10 minutes per NOC.

78. For example, in a month where Crowley receives 10,000 NOCs, it would take 1,667 hours on those NOCs. That equates to more than ten additional individuals on staff who spend all of their time (160 hours/month) responding to GSA's NOCs.

79. Even using Crowley's software to categorize the NOCs and respond on a macro level, Crowley's Deputy Program Manager has had to spend as much as 20 hours per week working addressing NOCs issued by GSA, while also relying on other employees as well to assist with addressing those issues.

80. Multiple employees at Crowley have had to dedicate time and resources to dealing with the GSA's improper audits and NOCs.

81. Excluding outside legal costs, Crowley estimates that it has already cost Crowley at least $180,000 in personnel time attempting to review, assess, and challenge the NOCs.

82. In addition, Crowley has expended significant resources challenging GSA's authority to conduct audits and make determinations that are contrary to the Contracting Officer's interpretation of the contract.

83. Crowley would not have incurred these expenses if GSA had simply served as

USTRANSCOM's independent auditor and provided it with recommendations but otherwise accepted the Contracting Officer's interpretation of the contract.

84. One of the key benefits of FAR-based contracting is the certainty that any and all disputes related to the contract are subject to final decision by the Contracting Officer, and not another government official who lacks an understanding of the contract's terms and specifications.

85. GSA's actions have deprived Crowley of that certainty with respect to the contract and other FAR-based opportunities for which GSA will try to audit invoices under 31 U.S.C. § 3726 without regard to the Contracting Officer's interpretation of the contract.

86. Crowley now spends its resources determining the shipment information and relevant documentation for each and every one of the tens of thousands of NOCs; evaluating the grounds for the NOCs and whether they are valid; identifying bases to challenge each NOC which might persuade GSA to reverse a determination which is already contrary to the terms of the contract, as interpretated by the Contracting Officer; drafting and submitting a challenge of each NOC to the GSA; and reviewing and tracking GSA's responses.

87. The enormous resources required to address the NOCs harm Crowley's ability to adequately perform the contract.

**G. GSA's position that it has the independent right to audit Crowley and to override contractually agreed charges as some sort of super-authority is meritless.**

88. GSA takes the position that it can audit Crowley's invoices and issue NOCs under the Transportation Act, 31 U.S.C. § 3726(b).

89. GSA is wrong for three reasons.

90. First, the Transportation Act only authorizes GSA to audit a "carrier" or a "freight forwarder" that issues "transportation bills."

91. Here, Crowley is not acting as a carrier or freight forwarder issuing such bills, but

rather as a contractor issuing invoices.

92. <u>Second</u>, even if Crowley were a carrier or freight forwarder, it is undisputed that USTRANSCOM awarded the contract under the FAR, not the Transportation Act or ICA.

93. As a result, the contract's disputes clause, 48 C.F.R. § 52.233-1, provides that "[t]his contract is subject to 41 U.S.C. chapter 71, Contract Disputes" (i.e., the CDA).

94. The Transportation Act does not apply to a contract awarded subject to the CDA.

95. <u>Third</u>, even if Crowley fails in the first two arguments, it is undisputed that USTRANSCOM (through the Contracting Officer) issued a final and conclusive determination in Crowley's favor, finding the NOCs "not valid."

96. The CDA provides that: "The contracting officer's decision on a claim is final and conclusive and is not subject to review by any forum, tribunal, or Federal Government agency, unless an appeal or action is timely commenced as authorized by this chapter." 41 U.S.C. § 7103(g).

97. Similarly, 48 C.F.R. § 52.233-1(f) states: "The Contracting Officer's decision shall be final unless the Contractor appeals or files a suit as provided in 41 U.S.C. chapter 71."

98. Here, GSA brazenly ignores the Contracting Officer's final decisions and the CDA's finality clause.

**H.     Crowley does not have or seek a contractual remedy against GSA.**

99. Crowley is seeking reimbursement for the improperly seized funds in a separate case currently pending in the U.S. Court of Federal Claims (No. 21-1405-PEC).

100. In that case, Crowley is seeking damages against USTRANSCOM under the CDA since Crowley has not received payment in full as required by the contract. Crowley is also seeking, in an alternative count only, reimbursement of the funds improperly seized by GSA under the ICA, 49 U.S.C. § 14705(f).

101. Crowley's action in this Court, by contrast, concerns only the narrow issue of GSA's auditing of Crowley's invoices beyond GSA's statutory authority under 31 U.S.C. § 3726(b), and in a manner that directly contradicts the final decisions of the Contracting Officer in violation of the CDA's finality clause.

102. GSA is not a party to the contract, and Crowley is not asking this Court to interpret the contract or decide the merits of the five categories of NOCs since the Contracting Officer has already done so.

103. The Court of Federal Claims does not have jurisdiction to render judgment against GSA for any form of contractual relief since GSA is not a party to the contract and thus cannot be sued in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a), and CDA.

104. Indeed, the Department of Justice recently argued to the Court of Federal Claims that GSA's actions are "unilateral" and "sovereign acts," and that the "actions of one Government agency cannot give rise to a breach of contract claim against a different agency." *Crowley Govt. Servs. v. United States*, No. 1:21-cv-01405-PEC, Dkt. 7 at 8-9 (Fed. Cl. Aug. 9, 2021). Thus, the Department of Justice does not consider Crowley's remedy to be contractual.

105. Likewise, the Court of Federal Claims does not have jurisdiction to render judgment against GSA for its violation of the CDA's finality clause, since GSA is not a party to the contract and cannot be sued under the CDA. GSA's violations of the CDA are beyond the contract and can only be remedied by this Court.

106. Moreover, even if Crowley could properly sue GSA in the Court of Federal Claims under the ICA, 49 U.S.C. § 14705(f) (which Crowley has separately plead in the Court of Federal Claims in the alternative only), such an action would be limited to a recovery of "charges" improperly deducted by GSA. The Court of Federal Claims does not have jurisdiction under 49

U.S.C. § 14705(f) to render judgment against GSA for violating the CDA's finality clause.

107.  Crowley seeks no monetary relief (for the offsets or otherwise) or other contractual remedy from this Court, but instead only declaratory and injunctive relief to avoid the irreparable harm caused by a federal agency acting outside the powers granted it by Congress.

### COUNT I
### (Unlawful Agency Action, 5 U.S.C. §§ 701-706)

108.  Crowley incorporates the allegations in Paragraphs 1-107.

109.  This Court has the authority to hold unlawful and set aside GSA's actions as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or without observance of procedure required by law. *See* 5 U.S.C. § 706.

110.  GSA has created an actual and justiciable controversy between itself and Crowley by way of the conduct described above.

111.  The Transportation Act does not authorize GSA's continuing audits of Crowley's invoices under the contract, audits that have already resulted in more than fifty thousand NOCs.

112.  The Transportation Act only authorizes GSA to audit bills from a "carrier or freight forwarder." 31 U.S.C. § 3726(a).

113.  Crowley is not acting as a carrier or freight forwarder under the contract. As such, Crowley's invoices are not "transportation bills" within the meaning of 31 U.S.C. § 3726(b) and consequently, GSA does not have any independent legal authority to audit Crowley's performance.

114.  By continuing to audit Crowley's invoices and issue NOCs under the purported authority of 31 U.S.C. § 3726(b), GSA is exceeding its statutory authority and failing to act in accordance with law.

115.  In addition, even if Crowley was otherwise a carrier or freight forwarder under the

Transportation Act, that law does not apply to contracts awarded under the FAR and that include the FAR's disputes clause identifying the CDA as the sole dispute resolution procedure and source of contractual relief.

116.  Here, USTRANSOM awarded the contract subject to the FAR and the CDA's disputes process, not the ICA and the procedures in the Transportation Act. As such, GSA has no authority to audit the contract and issue NOCs.

117.  Finally, even if the Transportation Act authorized GSA to conduct post-payment audits, GSA is continuing to violate the CDA's finality clause by issuing NOCs that are directly contrary to the Contracting Officer's final decisions.

118.  The CDA states that the "contracting officer's decision on a claim is final and conclusive and is not subject to review by any forum, tribunal, or Federal Government agency, unless an appeal or action is timely commenced as authorized by this chapter." 41 U.S.C. § 7103(g).

119.  The Contracting Officer has already determined that each of the five categories of NOCs are "not valid" and "erroneous"; those determinations are "final and conclusive" and may not be reviewed and contested by "any … Federal Government agency," such as GSA.

120.  Yet, GSA is continuing to do that which is forbidden by ignoring the Contracting Officer and issuing NOCs based on GSA's own, contrary interpretation of the contract.

121.  GSA's actions seek to subordinate the Contracting Officer's final decisions to the independent decisions of GSA, which is strictly prohibited by law.

122.  Even if the Transportation Act applied to the contract, despite it being subject to the CDA, nothing in the Transportation Act gives GSA the authority to interpret the contract or disregard the Contracting Officer's final decisions.

123. Crowley has suffered a legal wrong and has been adversely affected and aggrieved by GSA's actions. *See* 5 U.S.C. § 702.

124. GSA's actions constitute final agency action under 5 U.S.C. § 704.

125. Crowley has suffered and continues to suffer the irreparable harms described above from GSA's unlawful actions.

126. Crowley has no other adequate remedy for the irreparable harm caused by GSA's unlawful actions.

## COUNT II
### (Alternatively, *Ultra Vires* Agency Actions)

127. Crowley incorporates the allegations in Paragraphs 1-126.

128. In the alternative, this Court should declare that GSA's actions are *ultra vires* and award injunctive relief.

129. Judicial review is available when an agency acts *ultra vires* and no other remedy is available. Here, no other remedy is available for GSA's unlawful actions.

130. There is no express statutory provision precluding review of Crowley's APA claim in Count I. Any alleged preclusion would therefore be implied.

131. To the extent the Court does not review Crowley's APA claim in Count I, there is no alternative procedure for review of Crowley's claim that GSA exceeded its statutory authority and violated the CDA's finality clause.

132. While the Court of Federal Claims has jurisdiction over Crowley's pending breach of contract claim against USTRANSCOM for money damages under the Tucker Act, 28 U.S.C. § 1491(a) and CDA, 41 U.S.C. § 7104(b)(1), it does not have jurisdiction to render judgment *against GSA* under the Tucker Act or CDA, since GSA is not a party to the contract and cannot be sued for a contractual remedy.

133. The Court of Federal Claims' only potential jurisdiction over GSA is under the ICA, 49 U.S.C. § 14705, but that jurisdiction is limited to an action to "recover charges" improperly deducted by GSA and precludes declaratory and injunctive relief.

134. Under such an action, which Crowley has separately plead in the alternative in its Court of Federal Claims case, the Court of Federal Claims can award a money judgment against GSA for improper deductions, but it does not have jurisdiction to declare GSA's actions in violation of the CDA's finality clause and enjoin GSA's continuing unlawful conduct.

135. For these reasons, Crowley's only remedy to stop GSA's continuing violations of the CDA's finality clause is an action in U.S. District Court.

136. GSA's actions against Crowley are *ultra vires* and beyond GSA's authority.

137. GSA's unlawful acts are causing and will continue to cause irreparable harm to Crowley.

## PRAYER FOR RELIEF

WHEREFORE, Crowley requests declaratory judgment against GSA and injunctive relief as follows:

A. Judgment declaring that GSA is not authorized to audit the contract under 31 U.S.C. § 3726(b);

B. Judgment declaring that GSA's NOCs violate the finality of the Contracting Officer's final decisions and that GSA is not authorized to ignore and subordinate the Contracting Officer's Final Decisions to GSA's independent determinations;

C. An injunction prohibiting GSA from conducting any further such audits and issuing such NOCs; and

D. Granting such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: August 30, 2021 | Respectfully submitted,<br><br>VENABLE LLP<br><br>/s/James Y. Boland<br>James Y. Boland (D.C. Bar No. 499355)<br>Nicholas M. DePalma (D.C. Bar No. 974664)<br>Kevin W. Weigand (D.C. Bar No. 1004998)<br>*Christopher G. Griesedieck (D.C. Bar No. 1028847)<br>8010 Towers Crescent Drive, Suite 300<br>Tysons, Virginia 22182<br>(703) 760-1997 (telephone)<br>(703) 821-8949 (facsimile)<br>jyboland@venable.com<br><br>*Counsel for Crowley Government Services, Inc.*<br>*\*subject to admission to this Court* |